GtHOLSON, J.
It is the duty of the state government to secure to the citizens of the state the peaceful enjoyment of their property and its protection from wrongful and violent acts. Eor the proper discharge of this duty, power is delegated in different modes. One of these is the establishment of municipal corporations. Powers and privileges are also conferred upon municipal corporations, to be exercised for the benefit of the individuals of whom such corporations are composed; and in connection with these powers and privileges, duties are sometimes specifically imposed. It is obvious that there is a distinction between those powers delegated to municipal corporations to preserve the peace and protect persons and property, whether to be exercised by legislation or the appointment of proper officers, and those powers and privileges which are to be exercised for the improvement of the territory comprised within the limits of the corporation, and its adaptation to the purposes of residence or business. As to the first, the municipal corporation represents the state — discharging duties incumbent on the state; as to the second, the municipal corporation represents the pecuniary and proprietary interests of individuals. As to the first, responsibility for acts done, or omitted, is governed by the same rule of responsibility which applies to like delegations of poAver; as to the second, the rules which govern the responsibility of individuals are properly applicable.
It is not the policy of governments to indemnify individuals for losses sustained, either from the want of proper laws, or from the inadequate enforcement of laws made to secure the property of individuals. Exceptions to this policy have been made; and in some of our sister states, the loss by the vio *378 lence of a mob, has, by express legislation, been charged on the city in which it occurred. But we have no such legislation ; and unless it can be shown, that in consequence of the principles settled in this state, as applicable to municipal corporations, or that from the language of the special statute conferring .power and imposing duty on the city of Cleveland, a responsibility for such a loss results, the action of the plaintiff can not be maintained.
An examination of the cases which have been cited by the counsel for the plaintiff as establishing the rule of responsibility applicable to municipal corporations, will show that, practically, they have not disregarded the distinction to which reference has been made. Any general remarks of the judges must be understood with reference to the case under consideration, and not extended to a class of cases subject to the operation of a different principle. The case of Groodloe v. Cincinnati, 4 Ohio Rep., 500, was for the alteration of the grade of a street previously established by the corporation, and in reference to which the plaintiff had erected the house injured by the change of grade. The case of Smith v. Cincinnati, 4 Ohio Rep. 514, was of the same character. The case of Rhodes v. Cleveland, 10 Ohio Rep., 159, was for “ cutting ditches and watercourses in such a manner as to cause the water to overflow and wash away the plaintiff’s land.” The case of McCombs v. Akron, 15 Ohio Rep., 474, 18 Ohio Rep., 229, was for an injury to the plaintiff’s house and lot by the cutting down and grading the street. In the case of Crawford v. Delaware, 7 Ohio St. Rep. 459, the case of McCombs v. Akron, which had been made the subject of a pretty free comment by Bronson, J., in Radcliff v. Brooklyn, 4 Comst. 205, was fully re-examined and the principle re-stated and affirmed, to-wit, that “ If erections are made on a lot, in accordance with an established grade, and the grade is afterward altered, and a substantial injury is thereby done to the owner of the lot, he is entitled to compensation.” The case of McCombs v. Akron imposed a stringent rule of liability on municipal corporations for acts done by their authority, in the improvement of streets, or in other public works; but, as shown by the reports *379 of the case, and much less, as afterward limited, and explained, it falls very far short of sustaining, upon principle, the claim of the plaintiff in this case. There is one case, cited by the counsel for the plaintiff, Commissioners of Brown County v. Butt, 2 Ohio Rep. 348, which approaches much nearer the principle he see,ks to establish. In that case the court appears to have overlooked the distinction between acts done by the officers of a county, as officers of the state, though elected by the people of the county, in discharge of a duty incumbent on the state, though devolved on such officers, and acts done for the immediate benefit of the people of the county, and in which they had, so to speak, an individual interest. But the counsel have overlooked the fact, that the ease of the Commissioners of Brown County v. Butt, for this departure from correct principle, was re-examined and overruled in the case of the Commissioners of Hamilton Co. v. Mighels, 7 Ohio St. Rep. 109.
The distinction we have' pointed out, and our conclusion that, on general principles, no liability for the acts or omissions of its officers can be charged on a municipal corporation in such a cáse as the present, is sustained by eases decided in other states. Prather v. City of Lexington, 13 B. Monroe, 559; Howe v. City of N. Orleans, 12 La. Ann. Rep. 481; Martin v. Mayor of Brooklyn, 1 Hill, 545-551; Bailey v. Mayor, etc., of New York, 3 Hill, 531, 539; Buttrick v. City of Lowell, 1 Allen, 172.
It is further claimed, that whatever may be the general rule of liability, special legislation has cast it upon the city of Cleveland, that the charter in force when the cause of action arose, imposes a specific duty to prevent riots, and that a liability for the failure to discharge this duty must result. The city of Cleveland was incorporated in 1836, and in the sixth section of its charter (34 O. L. 271), which prescribes the duties and powers of the city council, it is, among other things, provided, that “it shall be their duty to regulate the police of the city, preserve the peace, prevent riots, disturbances and disorderly assemblages.” The duty to prevent riots, is in connection with the duty to regulate the police *380 and to preserve the peace, and the argument, if good as to responsibility for a riot, would also be good to show a responsibility for a defect in the police, or for a breach of the peace. The argument, therefore, proves too much, for it can not be supposed that the legislature intended to charge on the people of Cleveland, every loss which might be attributed to the want of an efficient police, or result from any breach of the peace. On the contrary, the general words in the statute must be “restrained unto the fitness of the matter or person.” An administrative and legislative body, acting in the government of a city, is the subject in view of the enactment, and the duty imposed is that properly appertaining to such a body- — the making regulations, by-laws and ordinances, to be enforced by officers appointed for the purpose. And in the next sentence, it is provided that “ they shall have authority to appoint watchmen, and prescribe their powers and duties, and to prescribe fines and penalties for their delinquencies.”
We feel entirely clear that the construction of the statute claimed by the counsel for the plaintiff can not be maintained.
For reasons which have been stated, we are satisfied that neither on general principles, nor from any expression of legislative intention, which, in such a case, should be clear and explicit, can we charge on the city of Cleveland the loss to the plaintiff, whether resulting directly from a riotous* assemblage of persons, or from the interference or neglect of those officers of the city, whose duty it was to preserve ihe peace.
■ Demurrer sustained, and judgment for the defendant.
Scott, O.J., and Sutliee, Peck and Brinkerhoee, ? F., concurred.