### IDA UDKIN vs. THE CITY OF NEW HAVEN.

Third Judicial District, Bridgeport, October Term, 1907.
BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

The duty to repair highways, which is imposed upon towns and cities of this State by statute (§§ 2013, 2020), is met and discharged whenever it appears that reasonable care has been exercised by the municipality to keep the street in a suitable condition for public travel.

In the exercise of such care, the officers of a municipality have no power to enter upon private property adjoining the street and change or abate conditions existing there, merely because these tend at times to create a defect within the highway limits; and therefore a judgment against the municipality based upon such a misconception of its legal power and duty, is erroneous and harmful.

A pipe or conductor upon a building which discharges water on private property, whence it naturally flows over the sidewalk and at times freezes and renders the walk slippery and dangerous, is not a nuisance per se which a municipality, as such, has power to abate at its pleasure.

The grant of authority to a municipal corporation, or its acceptance

of authority conferred upon it, for the performance of strictly governmental duties, does not of itself create a liability for an omission to perform such duties, nor for a negligent performance of them; the only liability in such cases is that which is declared by statute, either expressly or by clear implication.

Argued October 22d—decided December 17th, 1907.

ACTION to recover damages for personal injuries alleged to have been caused by the negligence of the defendant, brought to and heard in damages by the Court of Common Pleas in New Haven County, *Wolfe, J.;* facts found and judgment rendered for the plaintiff for $275, and appeal by the defendant.  *Error and new trial ordered.*

The plaintiff, while traveling over one of the sidewalks in the defendant city at about seven o'clock in the evening, slipped and fell by reason of the then icy condition of the walk, thereby sustaining the injuries for which she sued. The premises in front of which she fell were covered by a building which came to the street and sidewalk line, save that at one end of the lot there was an open space or area-way leading to a side entrance of the building.   The strip of ice upon which the plaintiff fell was immediately in front of the area-way and extended across the walk, it being about five or six feet in width at the middle of the walk and about ten feet at the curb.   Some of the ice had been thereon for a number of days, and some was caused by the freezing of the water which flowed from the melting snow in the area-way, and of that which discharged thereon from a leader pipe upon the building and thence passed out upon the walk.   It was the habit of the occupants of the building, whenever there was a heavy fall of snow, to shovel a portion of the same from the roof and sidewalk into the area-way.   The leader pipe referred to was upon the side wall of the building, a few feet back from the sidewalk, and was designed to carry off the water which gathered upon the roof.   It discharged near the ground upon the surface of the area-way.   Its position and use were apparent and had continued for some time.

The finding states a variety of facts concerning the

formation, character, and continuance of the ice in question, the care bestowed upon the walk, and the character of the weather for a period of time preceding the accident, which, as they have no importance as bearing upon the aspect of the case discussed, need not be here rehearsed.

As bearing upon the situation produced by the leader pipe and melting snow, as recited, and their contribution to the conditions which caused the plaintiff's fall, the court finds that " it did not appear in evidence that means were provided for draining the vacant space referred to, but it did appear that when snow melted in such place, or water was discharged from the leader thereon, the water went naturally out upon the sidewalk across the same in a slightly diagonal direction toward the east and toward the gutter," and that all the facts and conditions referred to were well known to the officers of the city.

The conclusion reached by the court upon the facts is stated to be " that the defendant had notice and knowledge of the slippery and dangerous condition of the sidewalk and of the other conditions referred to, . . . and that the defendant was negligent in not removing the ice from the sidewalk or causing said sidewalk to be made reasonably safe by the sprinkling of sand or other substance on the icy portions thereof, and also in permitting the continued existence of the foregoing described conditions."

Two of the defendant's claims of law were as follows : 1. That the defendant had no opportunity or power to prevent the running of the water upon the walk in the manner stated, and could not be held liable for its failure to prevent it. 2. That the defendant had no opportunity or power to enter upon the premises and abate the conditions existing thereon, as stated. These claims were expressly overruled.

*Leonard M. Daggett* and *James Kingsley Blake*, for the appellant (defendant).

*George E. Beers* and *Charles L. Brooks*, for the appellee (plaintiff).

PRENTICE, J. It is apparent from the record that the rule of duty which the court imposed upon the defendant in its care of the icy walk in question was one that required it to deal not only with conditions within the highway and with conditions without it by means to be employed within it, but also with conditions without it and upon private lands by means and measures to be there directly applied. The defendant claimed that it had no power to go upon the premises of private owners to change conditions there which were conducive to the formation of ice upon the walk in question, and that therefore no duty to do so was cast upon it, since where there was no power there could be no duty. The court held that the defendant had such power, and that its reasonable care of the street involved the reasonable exercise of that power. It needs no argument to disclose the harmfulness to the defendant of this ruling, if incorrect, nor to reveal the grave consequences to municipal corporations charged with the repair of highways, and to private property owners alike, which are involved in it.

Counsel for the plaintiff earnestly urge upon us the correctness of the ruling. The argument advanced in support of this contention consists of the assertion of the proposition that the defendant city possessed the power, both independently of its charter and under the grant of power therein, to abate the outside conditions recited in the finding, as public nuisances. It is clear that the leader and accumulated snow in question did not constitute nuisances *per se*, and that therefore the power to abate them did not inhere in the defendant as a public corporation. Its charter contained a delegation to its common council of the power to adopt orders and resolutions and enact ordinances to prevent nuisances, and to summarily abate them at the expense of the person maintaining them. This granted power to declare nuisances and provide for their abatement, although unlimited in terms, is not unlimited in law. *Yates* v. *Milwaukee*, 10 Wall. (U. S.) 497; *State* v. *Clarke*, 69 Conn. 371, 373, 37 Atl. 975. If, however, it be assumed that the leader and snow created such conditions as to

make it a lawful exercise of the city's authority to declare them to be nuisances, the argument by which it is sought to impose a liability upon the defendant for its non-action in the premises, remains incomplete, and counsel have made no attempt to complete it. It remains to be shown that the city, having the claimed power, was in duty bound to make reasonable use of it in the performance of its obligation to keep its highways in sufficient repair, and would be liable for negligence arising from its non-use of the power or the manner of its use. Plaintiff's counsel have assumed this proposition as the unstated major premise of its syllogism. It is, however, a false premise.

In the first place, the power conferred is a legislative one, and plainly discretionary, both as to what declarations of nuisances should be made, and as to the manner of dealing with the subject-matter of the declarations. The city, in the exercise of its discretionary legislative power thus conferred, has not seen fit to legislate as to situations like those under review. That which was necessary to be done before the conditions complained of could be abated upon the private lands where they existed, and at the hands of the city's agents in the exercise of administrative functions, has never been done. No officer or agent of the city was authorized to do what the court contemplated might have been done. The city's only shortcoming must therefore have been legislative, and result from the fact that its common council had not seen fit, in the exercise of its legislative functions, to take certain action deemed to be appropriate to situations like that here disclosed. But as respects the exercise of both discretionary powers generally, and legislative powers where the law has not either expressly or by clear implication imposed a duty as to their exercise, no liability attaches for either their non-exercise or the manner of their exercise. *Anderson* v. *East*, 117 Ind. 126, 127, 19 N. E. 726; *Hines* v. *Charlotte*, 72 Mich. 278, 40 N. W. 333; *McDade* v. *Chester*, 117 Pa. St. 414, 424, 12 Atl. 421; *Kiley* v. *Kansas*, 87 Mo. 103, 108.

But the aspect of the case thus far considered is only one

of·the results of the application of· broader principles.　It is accepted ˙law that the grant of authority to a municipal corporation, or acceptance by it of authority conferred, for the performance of strictly governmental duties, does not· of· itself create a liability for an omission to perform such duties, or for a negligent performance of them, and that the only liability in such cases is that which is declared by statute either expressly or by clear implication.　*Hewison* v. *New Haven*, 37 Conn. 475, 482; *Colwell* v. *Waterbury*, 74 id. 568, 573, 51 Atl. 530; *Hill* v. *Boston*, 122 Mass. 344; 2 Dillon on Mun. Corp., § 950.　The duty which the defend- ant owed in the care of this ·street, including its sidewalk, arose from certain general statutes which defined and fixed the duty and imposed the liability for nonperformance., There was no other duty or liability, and that duty and. liability was precisely the same as that which rested, and rests, upon every town, city or borough in the State, with· respect to the care of every highway within them.　*Hewi- son* v. *New Haven*, 34 Conn. 136, 139; *Beardsley* v. *Hart- ford*, 50 id. 529, 537; *Lavigne* v. *New Haven*, 75 id. 693, 696, 55 Atl. 569.　This duty was expressed to be that of repair, and the liability that of responding in damages to one who was injured in his person or property by means of the high- way's defective.condition.　General Statutes, §§ 2013, 2020., The duty thus imposed was in its legal measure not an abso- lute one, but one which called for the exercise of reasonable care to maintain the street in a reasonably safe condition for public travel.　This was the uniform rule of duty for highway care; but as reasonableness of care and condition may vary with each set of surrounding circumstances, di- verse in character it may be, the practical requirements of each place and occasion might be very unlike, but they would be unlike not because there was any shifting or va- riable measure of duty arising from whatever cause, but because that measure involved a consideration of all the surrounding circumstances.

So it is that it was of no significance in fixing the de- fendant's duty in the present case, what grant of special

powers might or might not have been embraced in its charter. It owed precisely the statutory duty described, and precisely that which is imposed upon the smallest town in the State, and none other. It is quite clear, therefore, that the duty was not one which either called for or justified entrance upon private property there to deal directly with situations which might tend to produce unsafe conditions in the highway. In *Hewison* v. *New Haven*, 34 Conn. 136, 141, and *Beardsley* v. *Hartford*, 50 id. 529, 539, it was so distinctly held. In the latter case the source of danger was an unguarded, open hatchway abutting upon the sidewalk but located upon private land. Its menace to the traveler was apparent, but this court said that the city had no right to go upon the land of the private owner to construct means of public protection, and that its efforts in respect to it must be confined to the limits of the street. In *Gaylord* v. *New Britain*, 58 Conn. 398, 20 Atl. 365, was presented a case involving the duty of municipalities in respect to icy sidewalks, and the court in emphatic language negatived any responsibility beyond that for defective conditions existing within the limits of the walk or street.

Not everything which endangers the safety of highway travel renders a highway defective and out of repair. *Hewison* v. *New Haven*, 34 Conn. 136, 140; *Ayer* v. *Norwich*, 39 id. 376, 381. It has been frequently contended that nothing which was without the highway could have that effect. This court has, however, held that there might be situations where the source of danger, although situated without the way, was of itself so direct a menace to travel over the way and so susceptible to protection or remedial measures which could be reasonably applied within the way, that the failure to employ such measures would be regarded as a lack of reasonable repair. *Beardsley* v. *Hartford*, 50 Conn. 529. But where the cause of complaint is not of itself a direct source of danger to the traveler, or, being such a source of danger, is not susceptible to protective or remedial measures which can be

reasonably employed within the highway, it cannot be regarded, and as far as we are aware has never been regarded, as a defect in the highway. Such outside conditions, in so far as they are likely to contribute to produce dangerous conditions within the highway, and are known or ought to have been known to the municipality, may well be considered as one of the circumstances in determining whether or not reasonable care has been used with respect to the latter conditions; but that is a very different matter from requiring municipal corporations, in their care of highways, to deal directly with such outside conditions as in themselves creating defects in the highway.

There is error and a new trial is ordered.

In this opinion the other judges concurred.