30644. CITY OF DALTON *v.* ANDERSON *et al.*
30645. JOYCE, next friend, *et al. v.* CITY OF DALTON *et al.*

DECIDED FEBRUARY 17, 1945.

*W. Gordon Mann,* for City of Dalton.

*R. Carter Pittman, Graham Wright,* for Anderson.

*Stafford Brooke,* for Joyce.

FELTON, J.   Walter L. Joyce Jr., in his own behalf and as next friend of two minor children, sued the City of Dalton and Mrs. Myra M. Anderson for damages arising out of the death of his wife, the mother of the two children, resulting from the fall of a shed attached to a building owned by Mrs. Anderson in the City of Dalton.   The defendants filed separate answers and the trial resulted in a verdict against the City of Dalton and in favor of Mrs. Anderson.   The plaintiff and the City of Dalton filed separate motions for a new trial, each of which was overruled, and the cases are here on the exceptions of the movants to the overruling of the motions for new trial.

■ The error complained of in the first special ground of the motion for a new trial will not be passed upon as it will not likely occur on the next trial of the case.

■ Error is assigned on the following excerpt from the charge of the court:   "I charge you that if you should find that Mrs. Joyce came to her death as a result of the negligence of the tenant or any illegal use of the premises by the tenant then I charge you that under the provision of Section 61-112 of the Code, as I have heretofore given you in charge, that Mrs. Myra M. Anderson is not responsible for such damages, if you further find that she had fully parted with possession and right of possession of the premises."   This charge was error.   Mrs. Anderson obtained title to the building to which the shed was attached after it had been leased to tenants, and the lease was transferred to her.   The lease provided in part:   *"The lessor or his agents shall have the right to enter said premises at reasonable hours, to examine the same, make such repairs, additions, or alterations as may be deemed necessary for the safety, comfort, and the preservation of said building, and to enter upon said premises at any time to repair or improve lessor's adjoining property, if any."*   Where a landlord fully parts with the possession of the premises and retains no control or right of control over them, and does not assume control, "he is ordinarily under no duty to inspect their condition while the tenant remains in possession, and is not chargeable with liability for defective construction not made by him or under his direction, or for a

failure to make repairs, unless and until he is given notice or obtains actual knowledge of the condition, or on his own initiative assumes to remedy or repair the defect." *Dobbs* v. *Noble, 55 Ga. App.* 201 (189 S. E. 694) ; *Adams* v. *Klasing, 20 Ga. App.* 203 (92 S. E. 960) ; *Ocean Steamship Company* v. *Hamilton,* 112 *Ga.* 901 (38 S. E. 204) ; *Elijah A. Brown Company* v. *Wilson,* 191 *Ga.* 750 (13 S. E. 2d, 779) ; *McCrory Stores Corporation* v. *Ahern,* 65 *Ga. App.* 334 (15 S. E. 2d, 797) ; *Kimball* v. *Morcock, 57 Ga. App.* 750 (196 S. E. 125) ; *Echols* v. *Patterson,* 60 *Ga. App.* 372 (4 S. E. 2d, 81) ; *Ross* v. *Jackson,* 123 *Ga.* 657 (51 S. E. 578) ; *Marr* v. *Dieter, 27 Ga. App.* 711 (109 S. E. 532) ; Code, § 61-112. His liability, however, continues after the leasing of the premises, where he has reserved the right to enter to make repairs. Where the tenant has exclusive possession of the property and there is no covenant to repair or right of entry to inspect or repair, the law suspends the liability of the lessor as to injuries from defects existing at the time of the lease which the lessor could not have discovered by the exercise of ordinary care; and as to those known to the tenant at the time, or patent and discoverable by the exercise of ordinary care, and as to those arising after the tenancy began, until notice by the tenant. The suspension of the liability until notice or knowledge is based on the fact that under the circumstances related the lessor has no right to go upon the premises to inspect, and the duty to repair does not arise until notice is given by the tenant of the defects in the premises or the owner otherwise acquires knowledge. The rule in some jurisdictions is that where the landlord covenants to repair he is under duty to exercise ordinary care in inspecting and repairing defects discovered thereby, and is liable for injuries resulting from his failure to perform this duty. The basis for the rule is that where there is a covenant to repair there is an implied reservation of the right to enter, inspect, and repair. In other jurisdictions the express reservation of the right to enter, inspect, and repair subjects the landlord to the same liability even in the absence of a covenant to repair. The latter rule is more comprehensive and logical and is hereby declared as the rule in this State. It seems inescapable that when the reason for the suspension of a landlord's liability ceases the suspension of liability ceases. Since the law places the duty to repair defects in premises on the landlord, his reservation of the

right to enter, inspect, and repair removes every vestige of reason why the liability for failure to repair defects should be suspended, as in cases where the landlord surrenders exclusive possession to a tenant. In the instant case we have a specific reservation and do not have to rely on implication. Mrs. Anderson was under a duty to exercise ordinary care in making reasonable inspection of the building, and in repairing the defects discovered or which she by the exercise of ordinary care should have discovered. This rule, which it will be observed is confined herein to the duty of the lessor to one other than the tenant and his invitees, is supported by abundant authority from other states and physical precedent from the Supreme Court of this State. In *Folsom* v. *Lewis, 85 Ga.* 146 (11 S. E. 606), the ground upon which the lessor was held liable is not stated, but very probably was the fact that the particular space rented presented to the lessor opportunity both to inspect and repair. See Appel *v.* Muller, 262 N. Y. 278 (186 N. E. 785, 89 A. L. R. 477), and annotation, p. 480; Paine *v.* Gamble Stores, 202 Minn. 462 (279 N. W. 257, 116 A. L. R. 407); Johnson *v.* Prange-Geussenhainer Co., 240 Wis. 363 (2 N. W. 2d, 723); Friedl *v.* Lackman, 136 Ohio St. 110 (23 N. E. 2d, 950); 32 Am. Jur. 656, § 770, n. 18; 35 Harvard Law Review 633, 638, n. 10; Ingwersen *v.* Rankin, 47 N. J. L. 18 (54 Am. R. 109); Lucas *v.* Brown, 82 Fed. 2d, 361 (6). Generally, see Waller *v.* Ross, 100 Minn. 7 (110 N. W. 252, 12 L. R. A. (N. S.) 721, 117 Am. St. R. 661, 10 Ann. Cas. 715); and 50 L. R. A. (N. S.) 286. The liability of the owner in such case is for injuries resulting from the failure to exercise ordinary care in inspecting the premises and repairing defects which would have been discovered if ordinary care had been exercised in inspecting them. The owner would not be liable for injuries resulting from defective premises, no matter how they came to exist, if she did not have notice of them and had exercised ordinary care in inspecting the premises. Other charges similar to the one ruled on are excepted to. The court does not deem it necessary to set them forth and pass on them, inasmuch as the case was tried on the wrong theory, and whatever errors there are in the charge on this question are attributable to that fact, and such errors will not likely occur on another trial.

■ It was error for the court to charge as follows: "I charge you as a matter of judicial knowledge that in the absence of proof to the contrary it may be assumed by the jury that a shed extending outwardly from a business building and over a sidewalk is designed for the purpose of furnishing shade and shelter for pedestrians and customers using the building and such shed is not intended to support the weight of a man or men who may climb upon said shed with ladders for a purpose disconnected therewith, and if you find from the evidence in this case that persons without the knowledge and the consent of the owner went upon the shed in question, and thereby weakened the supports of said shed and as a result thereof the shed was caused to fall, and you find that was the cause of the falling of the shed, then I charge you that the owner would not be liable for such resulting injury and damage." This charge was error for the reason that questions of the purpose of a shed and its strength are matters of proof and are not such as are universally known as to justify the application of the doctrine of judicial cognizance. The ruling in division two is also applicable to this charge as respects the assignment of error by the plaintiff Joyce.

■ The court did not err in excluding from evidence two lap links which had been used for comparison in examining witnesses as to a lap link which had spread and which was attached to the building from which the shed fell.

■ As against the City of Dalton the following charge was error: "I charge you, gentlemen, with reference to the ordinances which have been introduced in evidence, that if you find that the defendants, or either of them, violated one or more of said ordinances of the City of Dalton, and you further find that the violation thereof was the proximate cause of the death of the deceased, or directly contributed thereto, that such violation of such city ordinances is negligence per se against the defendants or whichever of the defendants you should find violated such city ordinances, if either. Negligence per se means negligence as a matter of law." The two ordinances in evidence are as follows: "66. Building Inspector; Powers; Duties: The City of Dalton is authorized and empowered to employ a building inspector with authority to examine and condemn any building, shed, awning, or other structure of said city. In the event it appears that such

structure is a menace to the health or safety of inmates, neighbors, the building inspector to have the right to take into consideration the sanitation, ventilation, combustibility, and location of said building, shed, awning, etc., in forming his opinion as to whether or not such structure is a menace. In the event such building or structure shall be deemed a menace to the neighborhood or city, it shall be the duty of the building inspector to condemn such building or structure, and require the owner thereof to either repair such building in the manner required by the inspector, or remove same altogether. Such condemnation of buildings or structures to be after notice has been served upon the owner or tenant of such building or structure, the form and time of the notice to be given to be controlled by such ordinances as may be hereafter passed by said city."

"268. It shall be unlawful for any person, firm, or corporation to construct, maintain, or repair any awning, or portico in the City of Dalton where same is attached to the building, and situated on Hamilton Street in the said city between the intersections of Waugh Street and Morris Street: provided, however, that awnings constructed of canvas or similar material stretched on a frame which is adjustable and capable of being drawn up and out of the street or otherwise folded against the building may be constructed and maintained after permission granted by the mayor and council. 269. It shall be unlawful for any person or firm or corporation to erect or maintain any signboard or other kind of sign within the limits aforesaid where such sign extends above and across the public sidewalk: provided, however, that this section shall not be construed to prohibit the maintenance of any sign which does not extend a greater distance than three feet from the building to which attached and which is not at a less height than seven feet from the surface of the sidewalk. 270. Any sign, awning, or portico not constructed according to the above two sections shall be prohibited, and removed after five days' notice by the Chief of Police, said notice to be in writing and specify the awning, portico, or sign to be removed, stating time allowed for removal, and the service to be personal upon the owner, his agent in charge or the tenant in possession."

It would not be negligence per se on the part of the city to fail to remove the shed because it was prohibited by an ordinance

which is the abatement of a nuisance. The question as to the city was whether it had failed to obey a duty imposed on it by a higher power, the State, to wit, the duty to keep its streets and sidewalks in a reasonably safe condition. *Head* v. *Augusta, 46 Ga. App.* 705 (169 S. E. 48); *Mayor &c. of Dalton* v. *Wilson, 118 Ga.* 100 (44 S. E. 830, 98 Am. St. R. 101).

Ground two of the motion in case No. 30644, assigning error on a correct charge because it failed to include another and correct principle of law, is without merit. Case No. 30644, *City of Dalton* v. *Anderson,* is reversed by reason of the rulings in divisions 3 and 5 of the opinion. Case No. 30645, *Joyce* v. *City of Dalton,* is reversed by reason of the rulings in divisions 2 and 3.

*Judgments reversed. Sutton, P. J., concurs.*

PARKER, J., concurs in the judgment and in all the rulings except division 3 of the opinion from which he dissents. See *Culbreath* v. *Kutz, 37 Ga. App.* 425 (140 S. E. 419).